# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 14-cr-0022-LRR |
| vs. | **ORDER REGARDING DETENTION** |
| CORRIE JAY HULKE, | |
| Defendant. | |

This matter was before the Court for a detention hearing. On May 23, 2017, the United States Probation Office filed a Petition to Revoke Supervision. (Doc. 3). Defendant was arrested pursuant to that petition and appeared before the Court on May 24, 2017. The government moved for detention pending a revocation hearing on Tuesday, May 30, 2017, at 10:45 a.m. For the reasons that follow, the Court orders defendant's release on modified conditions pending the revocation hearing.

On December 17, 2002, defendant was convicted in the United States District Court for the Southern District of Iowa of Conspiracy to Manufacture Methamphetamine and Creating a Substantial Risk of Harm to Human Life While Manufacturing, or Attempting to Manufacture Methamphetamine. The Honorable James E. Gritzner, Chief United States District Court Judge, sentenced defendant to 151 months' imprisonment, followed by a four-year term of supervised release. Defendant began his supervised release on May 24, 2013. On February 7, 2014, defendant's supervision was transferred to the Northern District of Iowa.

On February 9, 2014, defendant provided a urine sample that was shown to be dilute. United States Probation Officer Rhonda Moyle addressed the violation with defendant and no action was taken by the Court.

On July 31, 2015, defendant failed to appear for random urinalysis drug testing. Officer Moyle addressed this matter with defendant. Defendant provided a urine sample the following day, August 1, 2015, which tested negative for all controlled substances. No action was taken by the Court.

On May 22, 2017, defendant was arrested for Operating While Intoxicated-1st Offense (OWI). According to the police reports, defendant was driving 71 mph in a located posted for 55 mph, and improperly changed lanes. Defendant consented to and failed field sobriety tests. A Preliminary Breath Test indicated an alcohol concentration of more than .08. Another test at the jail indicated an alcohol content of .141.

The detention hearing before this Court was governed by Rule 32.1(a)(6) of the Federal Rules of Criminal Procedure. Defendant had the burden of proving by clear and convincing evidence that he posed neither a risk of flight or a danger to the community.

Defendant indicated he had no memory of the first violation for providing a dilute sample in 2014, admitted the second violation for failing to appear to provide a urine sample in 2015, and asserted his Fifth Amendment right to remain silent as to the second and third violations on May 22, 2017, because of the pending OWI charge. Defendant also proffered that: (1) he had no violations while in prison; (2) he is the primary care-giver for his 92-year-old mother with whom he lives and for whom he needs to make arrangements for others to care for her if he is sentenced to a period of incarceration at the revocation hearing; and (3) he has a way to get to Court on Tuesday that would not require him to drive. The government did not object to these proffered facts.

The government did not present any evidence, but did proffer the information contained in the Petition to Revoke Supervision (Doc. 3). The government also asked the Court to take judicial notice that defendant's criminal history was Category III at the time of sentencing, that defendant's criminal history involved scored offenses between primarily 1997 and 1999, and that defendant had two instances of failing to appear; once in 1990 and another time in 1999. Defendant did not object to this proffered information, although defendant did not admit to the OWI violation reflected in the Petition to Revoke Supervision.

Although it was a close call, the Court found defendant carried his burden of proving by clear and convincing evidence that he does not pose a risk of flight or a danger to the community in a manner that could not be addressed by modifying his conditions of release. Although defendant did provide a dilute sample and missed a urinalysis test, on May 22, 2017, defendant did not violate any other conditions of supervision. Although if true defendant's conduct of driving while intoxicated at a high rate of speed while illegally changing lanes created a danger to the public, this appears to be aberrant behavior given his prior performance during the preceding three years and 364 days on supervised release. Although defendant did have two prior instances of failing to appear in court, those occurred a long time ago and defendant otherwise has appeared as required. Defendant is the primary caregiver for his elderly mother and therefore has strong ties to the community.

Based on this evidence, the Court finds by clear and convincing evidence defendant does not pose a flight risk and will appear on Tuesday at the revocation hearing. To the extent defendant poses a danger to the community, it arises from his driving while intoxicated. The Court believes it can address this danger by modifying defendant's

condition of release by barring him from driving a motor vehicle between now and the revocation hearing and by imposing a remote alcohol testing condition.

Therefore, the Court orders defendant released under the same terms and conditions of supervised release previously imposed, with the additional conditions that he not drive a motor vehicle and that he be subject to remote alcohol monitoring between now and the revocation hearing on May 30, 2017, at 10:45 a.m.

**IT IS SO ORDERED** this 26th day of May, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa